# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 23-cr-138-2-RBW |
| | : | |
| v. | : | 18 U.S.C. § 111(a)(1) |
| | : | |
| JONATHAN GRACE, | : | |
| | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, JONATHAN GRACE, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, S.E., in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote

1

count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the USCP's ability to perform their federally protected function to protect the U.S. Capitol building and its occupants.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol--including the danger posed by individuals who had entered the Capitol without any security screening or weapons check--Congressional proceedings could not resume until after every unauthorized occupant had left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *GRACE's Participation in the January 6, 2021, Capitol Riot*

8. On January 6, 2021, GRACE marched to the U.S. Capitol Grounds and joined a group of rioters who attempted to violently push their way past law enforcement officers guarding the Lower West Terrace Tunnel (tunnel) of the Capitol.

9. Around 3:12 PM, GRACE entered the tunnel. Almost immediately upon entering the tunnel, GRACE joined the collective efforts to push into the police line.



10. GRACE made his way deep into the mob of rioters inside the tunnel, put his head down, and began using his body weight to forcefully push in unison with the rioters against police officers.



11. As GRACE and the rioters thrusted their collective body weight into the officers, one officer could be heard screaming in pain as he was smashed between a shield and a metal door frame.



12. After GRACE's prolonged forceful pushing with other rioters, officers temporarily gained control in the tunnel. GRACE exited the tunnel but remained nearby on the Lower West Terrace.

13. GRACE pulled an unknown item out of his pocket and removed his tie string backpack and his brown beanie and handed the items to another rioter who was standing at the mouth of the tunnel.




14. At about 3:15 PM, less than one minute after he exited the tunnel, GRACE re-entered the tunnel, this time without wearing his beanie or backpack.



15. GRACE made his way to the front of the mob of rioters inside the tunnel and joined rioters pushing against officers. GRACE pushed against police officers with other rioters, while the mob of rioters inside the tunnel aggressively yelled commands like, "PUSH!" and "LET'S GO!" and "WHOSE STREETS? OUR STREETS!"



16. GRACE and the mob continued to push against the officer line until about 3:18 PM. At that time, police officers successfully pushed GRACE and other rioters out of the tunnel. GRACE unsuccessfully tried to grasp the wall to remain in the tunnel.



17. After police officers cleared rioters out of the tunnel, GRACE remained near the mouth of the tunnel as rioters continued to engage in violent acts against police officers. GRACE watched close by as rioters dragged a MPD officer out of the tunnel and attacked him.



18. About 20 minutes after he exited the tunnel, GRACE joined other rioters who began pushing against the police line, yet again attempting to force their way into the Capitol building.



19.     As police officers continued to attempt to fully clear the tunnel of rioters, GRACE remained at the front of the tunnel, fighting with officers and using his body to maintain ground. GRACE held onto the tunnel archway, turned his back to officers, and resisted the officers' pushing. GRACE also forcefully pushed into the officers, making physical contact with the officers as he assaulted them.



20.     A police officer sprayed chemical irritant at the rioters.  Only then did GRACE retreat to the crowd.



*Elements of the Offense*

21.     The parties agree that 18 U.S.C. § 111(a)(1) requires the following elements:

22.     First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), and any person assisting such an officer and employee.

23.     Second, the defendant did such acts forcibly.

24.     Third, the defendant did such acts voluntarily and intentionally.

25.     Fourth, the officers that the defendant assaulted were employees of the United States who were then engaged in the performance of their official duties or assisting officers of the United States who were then engaged in the performance of their official duties.

26.     Fifth, the defendant made physical contact with those officers and acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offenses charged in Count One, Civil Disorder.

## *Defendant's Acknowledgments*

27.     JONATHAN GRACE knowingly and voluntarily admits to all the elements of 18 U.S.C. § 111(a). Specifically, GRACE admits that he voluntarily and intentionally forcibly assaulted officers designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of their official duties. GRACE further admits that he knew at that time of the assault of the officers that the officers were engaged in the performance of their official duties or that he assaulted the officer on account of their performance of their official duties. GRACE admits that when he assaulted officers, he made physical contact and that he committed these acts with the intent to commit another felony, that is, Civil Discover in violation of 18 U.S.C. § 231.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By: *Ashley Akers*
Ashley Akers
Trial Attorney
MO Bar No. 69601
Capitol Siege Section
U.S. Attorney's Office
District of Columbia
Phone: 202-353-0521
Email: Ashley.akers@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Jonathan Grace, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10/11/23

Jonathan Grace
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10/11/23

Nabeel Kibria
Attorney for Defendant